2 A.3d 379

STATE OF NEW JERSEY, PLAINTIFF–APPELLANT, v.
WENDELL MANN, DEFENDANT–RESPONDENT.

Argued April 26, 2010—Decided August 4, 2010.

330

*Steven A. Yomtov,* Deputy Attorney General, argued the cause for appellant (*Paula T. Dow,* Attorney General, attorney; *Johanna Barba Jones,* Deputy Attorney General, of counsel; *Mr. Yomtov* and *Ms. Jones* on the briefs).

*Dennis A. Cipriano* argued the cause for respondent (*Robert Carter Pierce* of counsel; *Mr. Cipriano* and *Mr. Pierce* on the briefs).

Justice WALLACE, JR., delivered the opinion of the Court.

In this search and seizure case, we consider whether the police had reasonable and articulable suspicion to conduct an investigatory stop of defendant. The police sought and obtained a search warrant for co-defendant Michael Futch's person, residence, and car. Prior to the execution of the warrant, the police were engaged in surveillance of Futch when defendant, Wendell Mann, and his passengers, Wendell Conner and Jarrod Pringley, drove into a Wendy's parking lot and parked next to Futch's car. At that point, defendant and Futch engaged in a brief conversation. Although no exchange was observed, the police believed a drug

transaction was in progress and converged on the two men. Upon seeing the police, defendant ran towards the restaurant and refused to heed police commands ordering him to stop. The police pursued defendant through the restaurant and into the restroom and then seized defendant as he attempted to flush what appeared to be controlled dangerous substances (CDS or drugs) down the toilet. The police returned to defendant's vehicle, peered in the open window, observed additional suspected drugs, and arrested the passengers.

Defendant moved to suppress the drugs. The trial court denied the motion, concluding that the police had sufficient reasonable and articulable suspicion that a drug transaction was occurring to carry out an investigatory stop of defendant, and that the separate seizures of the drugs were lawful. The Appellate Division reversed. We granted certification. We hold that the trial court fairly concluded that the police had reasonable and articulable suspicion to support an investigatory stop of defendant and that the seizure of drugs from both locations was lawful.

I.

On September 1, 2005, a Union County grand jury indicted defendant for third-degree possession of cocaine, *N.J.S.A.* 2C:35–10(a)(1); second-degree possession of cocaine with intent to distribute, *N.J.S.A.* 2C:35–5(a)(1) and (b)(1); third-degree possession of Methylenedioxymethamphetamine (ecstasy), *N.J.S.A.* 2C:35–10(a)(1); second-degree possession of ecstasy with intent to distribute, *N.J.S.A.* 2C:35–5(a)(1) and (b)(2); third-degree hindering his own apprehension, *N.J.S.A.* 2C:29–3(b); fourth-degree hindering his own apprehension, *N.J.S.A.* 2C:29–3(b); and fourth-degree tampering with evidence, *N.J.S.A.* 2C:28–6(1). Co-defendants Conner and Pringley were also indicted.

Defendant, Conner, and Pringley filed motions to suppress the evidence seized. At the hearing on the motions, police officer Barry Laraway of the Roselle Police Department testified on behalf of the State. Laraway said he had been a police officer for

twenty years and had received training in drug enforcement. Laraway explained that Detective Stacey Williams had obtained warrants authorizing the police to search Futch's home, his vehicle, and his person for evidence of drug distribution. Laraway stated that on or about June 1, 2005, he was assigned to assist the narcotics unit in the surveillance of Futch's green Lexus as Futch was known for dealing drugs from his vehicle.

Laraway was alone in a marked patrol unit parked at a location where he was able to observe Futch's vehicle. After approximately thirty minutes, Laraway noticed a blue GMC Yukon driven by defendant with two passengers, who were later identified as Conner and Pringley, enter the parking lot and park next to Futch's Lexus. Laraway stated that he observed Futch walk to defendant's Yukon and engage in a less than ten second conversation with defendant. Based on his training and experience, Laraway believed that a narcotics transaction was in progress. Laraway testified that, although he could not identify Futch, another police officer radioed him that the man approaching the Yukon was Futch. The police converged on the scene to investigate and execute the warrants. Laraway explained that when defendant observed him approaching, defendant became visibly nervous, exited his vehicle, and started to run into Wendy's. Laraway repeatedly ordered defendant to stop, but defendant ignored the instructions and continued to run inside. Defendant rushed towards the restaurant's restroom with Laraway in close pursuit. Inside the restroom, defendant entered a stall and attempted to flush items he removed from his waistband down the toilet. Laraway grabbed defendant from behind, pushed him aside, and reached into the bowl to retrieve three plastic bags, later determined to contain marijuana and ecstasy. Defendant, who had been restrained by another officer, was placed under arrest.

Laraway returned to the location of the Yukon and noticed that Conner and Pringley were still inside the vehicle. Laraway said he peered into the Yukon's open, left-rear window and observed several plastic bags containing suspected drugs on the back seat.

He opened the rear passenger door, instructed the occupants to exit, and seized the suspected contraband. Laraway placed Conner and Pringley under arrest.

On cross examination, Laraway stated that before the Yukon arrived, three people exited the Lexus, entered the Wendy's, and were returning to the Lexus when the Yukon pulled into the parking lot. Laraway said that one of the individuals approached the driver's door of the Yukon, and the driver, later identified as defendant, got out of the Yukon. He observed the two men engaged in a brief conversation, but did not observe an exchange or any transaction between the two men.

Defendant presented no evidence, but Pringley offered the testimony of Jose Perez, an investigator. Perez testified that he took several photographs of the Yukon, and that from a distance of two to three feet away, one could not clearly see into the vehicle. On cross examination, Perez acknowledged that "[i]f the windows were down you could see into the vehicle."

The trial court credited Laraway's testimony and found that based on the totality of circumstances the police had reasonable and articulable suspicion that a drug transaction was taking place, and as a result, when defendant ran into the restaurant, it was reasonable for the police to follow and ultimately seize the drugs as defendant was attempting to flush them down the toilet. The court also found that after defendant's arrest for possession of drugs, the police acted appropriately in returning to defendant's vehicle and looking inside the open window, at which time Laraway observed the drugs in plain view. Consequently, the trial court denied defendant's motion to suppress.

Following the denial of his motion, defendant was tried and found guilty of all charges.[1] The trial court imposed an aggregate sentence of seven years in prison. Defendant appealed.

---

[1] Co-defendants Conner and Pringley were charged with drug offenses and found not guilty by the same jury that convicted defendant.

On appeal, in an unpublished opinion, the Appellate Division reversed the denial of defendant's motion to suppress. The panel concluded that, based solely on the brief conversation between defendant and Futch, "Laraway lacked an objectively reasonable and articulable suspicion" to conduct an investigatory stop. The panel believed that Laraway's testimony supported a mere "hunch" of criminal activity that did not rise to the level of articulable suspicion. The panel, applying the reasoning of *State v. Tucker*, 136 *N.J.* 158, 165–66, 642 *A.*2d 401 (1994), concluded that defendant's nervousness and his flight were insufficient to elevate the circumstances to the level of reasonable suspicion necessary to justify a seizure of defendant. The panel also suppressed the drugs seized from the Yukon, holding them to be the fruits of the prior unlawful stop of defendant.

We granted the State's Petition for Certification. *State v. Mann*, 200 *N.J.* 548, 985 *A.*2d 646 (2009).

## II.

### A.

We turn first to the standard of appellate review that must be applied to the trial court's findings. Recently, we reiterated that "an appellate court reviewing a motion to suppress must uphold the factual findings underlying the trial court's decision so long as those findings are supported by sufficient credible evidence in the record." *State v. Elders*, 192 *N.J.* 224, 243, 927 *A.*2d 1250 (2007) (citations and internal quotation marks omitted). A trial court's findings should not be disturbed simply because an appellate court "might have reached a different conclusion were it the trial tribunal" or because "the trial court decided all evidence or inference conflicts in favor of one side." *State v. Johnson*, 42 *N.J.* 146, 162, 199 *A.*2d 809 (1964). Rather an appellate court must defer to the trial court's findings that "are substantially influenced by [the court's] opportunity to hear and see the witnesses and to have the 'feel' of the case, which a reviewing court

cannot enjoy." *Id.* at 161, 199 *A.*2d 809 (citation omitted). Despite that deference, if the trial court's findings are so clearly mistaken "that the interests of justice demand intervention and correction," then the appellate court should review "the record as if it were deciding the matter at inception and make its own findings and conclusions." *Id.* at 162, 199 *A.*2d 809 (citations omitted). Of course, a reviewing court owes no deference to the trial court in deciding matters of law. *State v. Gandhi,* 201 *N.J.* 161, 176, 989 *A.*2d 256 (2010). When a question of law is at stake, the appellate court must apply the law as it understands it. *Ibid.*

## B.

Before we determine whether the Appellate Division correctly concluded that the police conducted an unconstitutional investigatory stop of defendant, we state the principles of law for such a stop.

"Both the United States and the New Jersey Constitutions protect citizens against unreasonable searches and seizures." *State v. Amelio,* 197 *N.J.* 207, 211, 962 *A.*2d 498 (2008) (citations omitted). Whether the investigatory stop by the police is of a person or an automobile, such a seizure implicates our constitutional protections. *Delaware v. Prouse,* 440 *U.S.* 648, 663, 99 *S.Ct.* 1391, 1401, 59 *L.Ed.*2d 660, 673 (1979) ("[P]eople are not shorn of all Fourth Amendment protection when they step from their homes onto the public sidewalks. Nor are they shorn of those interests when they step from the sidewalks into their automobiles." (citation omitted)).

A warrantless seizure is "presumptively invalid as contrary to the United States and the New Jersey Constitutions." *State v. Pineiro,* 181 *N.J.* 13, 19, 853 *A.*2d 887 (2004) (citation omitted). "Because our constitutional jurisprudence evinces a strong preference for judicially issued warrants, the State bears the burden of proving by a preponderance of the evidence that a warrantless search or seizure falls within one of the few well-

delineated exceptions to the warrant requirement." *Elders, supra,* 192 *N.J.* at 246, 927 *A.*2d 1250 (citations and internal quotation marks omitted). Consequently, these exceptions "must satisfy acceptable constitutional standards." *Ibid.* (citations omitted).

One such exception is denominated an investigatory stop or a *Terry*[2] stop. Such a stop "is valid if it is based on specific and articulable facts which, taken together with rational inferences from those facts, give rise to a reasonable suspicion of criminal activity." *Pineiro, supra,* 181 *N.J.* at 20, 853 *A.*2d 887 (citation and internal quotation marks omitted). In determining the reasonableness of the conduct of the police, an objective test is used. *Id.* at 21, 853 *A.*2d 887. Specifically, a reviewing court must assess whether "the facts available to the officer at the moment of the seizure or the search warrant a man of reasonable caution in the belief that the action taken was appropriate." *Ibid.* (citation and internal quotation marks omitted). "Neither inarticulate hunches nor an arresting officer's subjective good faith can justify an infringement of a citizen's constitutionally guaranteed rights." *Amelio, supra,* 197 *N.J.* at 212, 962 *A.*2d 498 (citation and internal quotation marks omitted).

Because the "determination of reasonable [and articulable] suspicion is fact-sensitive," a careful review of the totality of the circumstances surrounding each case is required. *Pineiro, supra,* 181 *N.J.* at 22, 853 *A.*2d 887 (citation omitted). Unfortunately, "[n]o mathematical formula exists for deciding whether the totality of circumstances provided the officer with an articulable or particularized suspicion that the individual in question was involved in criminal activity." *State v. Davis,* 104 *N.J.* 490, 505, 517 *A.*2d 859 (1986). Further, the fact that a suspect's behavior may be consistent with innocent behavior does not control the analysis. *See State v. Arthur,* 149 *N.J.* 1, 11–12, 691 *A.*2d 808 (1997) (finding articulable suspicion for investigatory stop of woman who entered car in known drug area and exited five minutes later with brown

---

[2] *Terry v. Ohio,* 392 *U.S.* 1, 88 *S.Ct.* 1868, 20 *L.Ed.*2d 889 (1968).

paper bag). "Police officers should consider whether a defendant's actions are more consistent with innocence than guilt; however, simply because a defendant's actions might have some speculative innocent explanation does not mean that they cannot support articulable suspicions if a reasonable person would find the actions are consistent with guilt." *Id.* at 11, 691 *A.*2d 808 (citations omitted). Unless the totality of the circumstances satisfies the reasonable and articulable suspicion standard, the investigatory stop "is an unlawful seizure, and evidence discovered during the course of an unconstitutional detention is subject to the exclusionary rule." *Elders, supra,* 192 *N.J.* at 247, 927 *A.*2d 1250 (citation and internal quotation marks omitted).

## C.

We turn now to apply those principles to the case at hand. The State maintains that the totality of the circumstances satisfied the standards for an investigatory stop, and defendant argues to the contrary. We agree with the State's position.

The facts and rational inferences underlying the trial court's finding that there were reasonable and articulable circumstances to support an investigatory stop are derived from Laraway's testimony, which the trial court accepted. The court found that: (1) the police possessed an arrest warrant for Futch and a search warrant for his car; (2) Futch was a known drug dealer who used his car to distribute drugs; (3) defendant drove into the Wendy's parking lot and parked next to Futch's vehicle; (4) defendant and Futch engaged in a brief conversation; (5) the police approached defendant and Futch, at which point defendant appeared nervous; (6) defendant ran towards the restaurant and failed to heed the officer's command to stop; and (7) Laraway followed defendant into the bathroom and observed defendant attempting to flush drugs down the toilet.

We are satisfied that the trial court's findings are amply supported by the record. The court noted that several of the factors, standing alone, such as defendant's nervousness and his brief

conversation with Futch, may not have been sufficient to establish a basis for an investigatory stop. However, as the trial court explained, as the circumstances compounded, they evidenced much more than nervousness and a casual conversation. *See State v. Stovall,* 170 *N.J.* 346, 367, 788 *A.*2d 746 (2002) (noting even though nervousness may be normal, it "does not detract from the well-established rule that a suspect's nervousness plays a role in determining whether reasonable suspicion exists" (citation omitted)). Indeed, the fact that there was a search warrant for Futch's vehicle from which he was known to deal drugs was a key factor the trial court considered in determining that the police conducted a valid investigatory stop.

In sum, we hold that the trial court fairly determined that the totality of the circumstances gave rise to a reasonable and articulable suspicion that defendant was engaged in criminal activity. Thus, the police properly pursued defendant into the Wendy's restroom and lawfully seized the suspected drugs that defendant attempted to flush down the toilet.

### D.

We next consider whether there was any impropriety in the seizure of the drugs from defendant's vehicle. The trial court found that the seizure of the drugs from the back of defendant's Yukon was valid under the plain view exception to the search warrant requirement. The Appellate Division disagreed and applied the fruit of the poisonous tree doctrine to invalidate the seizure.

A search without a warrant is presumptively invalid unless it "falls within one of the few well-delineated exceptions to the warrant requirement." *Elders, supra,* 192 *N.J.* at 246, 927 *A.*2d 1250 (citations and internal quotation marks omitted). We are concerned here with the exception to the warrant requirement known as the plain view exception. Pursuant to that exception three elements must be satisfied:

First, the police officer must be lawfully in the viewing area.

Second, the officer has to discover the evidence 'inadvertently,' meaning that he did not know in advance where evidence was located nor intend beforehand to seize it.

Third, it has to be 'immediately apparent' to the police that the items in plain view were evidence of a crime, contraband, or otherwise subject to seizure.

[*State v. Bruzzese*, 94 *N.J.* 210, 236, 463 *A.*2d 320 (1983) (citations omitted), *cert. denied*, 465 *U.S.* 1030, 104 *S.Ct.* 1295, 79 *L.Ed.*2d 695 (1984).]

Under the third requirement, "in order to seize evidence in plain view a police officer must have probable cause to associate the [item] with criminal activity." *Id.* at 237, 463 *A.*2d 320 (citation and internal quotation marks omitted).

In the present case, the trial court found that once defendant was apprehended inside the restaurant for possession of drugs, it was reasonable for Laraway to return to defendant's vehicle and question the occupants. The court also found Laraway acted lawfully when he looked through the open window and saw several plastic bags which he believed to contain CDS in plain view.

It is apparent from the trial court's findings that all three requirements of the plain view exception are satisfied here. First, Laraway was lawfully standing outside the Yukon when he looked inside the open window and observed the suspected drugs. Second, he did not possess advance knowledge that the drugs would be there. Third, upon seeing the plastic bags on the seat, it was immediately apparent to Laraway, based on his training and experience, that the bags contained suspected drugs.

Stated differently, Laraway was lawfully in the viewing area and, when he observed the drugs, he had probable cause to associate the bags of suspected drugs with criminal activity. We conclude that the plain view exception to the warrant requirement applies, and that Laraway's seizure of the drugs from the back seat of defendant's vehicle was lawful.

## III.

The judgment of the Appellate Division is reversed, and defendant's convictions and sentence are reinstated.

*For reversal and reinstatement*—Chief Justice RABNER and Justices LONG, LaVECCHIA, ALBIN, WALLACE, RIVERA-SOTO and HOENS—7.

*Opposed*–None.