NOT FOR PUBLICATION WITHOUT THE
 APPROVAL OF THE APPELLATE DIVISION
 This opinion shall not "constitute precedent or be binding upon any court."
 Although it is posted on the internet, this opinion is binding only on the
 parties in the case and its use in other cases is limited. R.1:36-3.

 SUPERIOR COURT OF NEW JERSEY
 APPELLATE DIVISION
 DOCKET NO. A-0349-15T2

STATE OF NEW JERSEY,

 Plaintiff-Respondent,

v.

CARLEE M. BRENNAN,

 Defendant-Appellant.
_________________________________

 Submitted May 10, 2017 – Decided June 28, 2017

 Before Judges Alvarez and Manahan.

 On appeal from Superior Court of New Jersey,
 Law Division, Morris County, Indictment No.
 13-09-1079.

 Joseph E. Krakora, Public Defender, attorney
 for appellant (Sophie Kaiser, of counsel and
 on the brief).

 Christopher S. Porrino, Attorney General,
 attorney for respondent (Sarah E. Ross, Deputy
 Attorney General, of counsel and on the
 brief).

PER CURIAM

 Defendant Carlee Brennan appeals from her conviction after a

conditional plea of guilty. Defendant entered her plea following
the denial of a motion to suppress. In a single point on appeal,

defendant argues:

 POINT I

 THE JUDGE ERRONEOUSLY DENIED BRENNAN'S MOTION
 TO SUPPRESS BECAUSE THE OFFICER LACKED A
 REASONABLE SUSPICION TO STOP THE VEHICLE AND
 HAD NO "HEIGHTENED AWARENESS OF DANGER" TO
 ORDER BRENNAN TO EXIT THE VEHICLE.

 A. The Officer Lacked Reasonable
 Articulable Suspicion To Conduct An
 Investigatory Stop.

 B. The Officer Lacked the
 "Heightened Awareness Of Danger"
 Necessary To Order Brennan To Exit
 The Vehicle.

 C. The Judge Erred In Concluding
 That The Drugs Would Have Been
 Inevitably Discovered.

 1. The State Failed To Prove
 That [T]he Heroin Would Have
 Been Inevitably Discovered
 Through Impoundment.

 2. The State Failed To Prove
 That [T]he Heroin Would Have
 Been Inevitably Discovered
 Through A Search Warrant.

 Following our review of the arguments, in light of the facts

and applicable law, we conclude that the denial of the motion was

not erroneous. Accordingly, we affirm.

 We take the facts from the suppression hearing record. Around

midnight on July 14, 2013, Morristown police officers Brian LaBarre

 2 A-0349-15T2
and Carmen Caponegro arranged to meet at a Dunkin Donuts. LaBarre

arrived first. While LaBarre was waiting, he was approached by a

citizen that reported observing "someone [] slumped over into the

passenger compartment" of a gray sedan in the parking lot.

 Based upon that information, LaBarre proceeded to walk to the

car carrying his flashlight. Caponegro, who just arrived,

followed. As he approached the vehicle, LaBarre observed a female,

later identified as defendant, moving about in the passenger seat.

Just prior to announcing his presence, LaBarre observed defendant

mouth "cops" while moving objects in her lap. When he reached the

vehicle, LaBarre observed a syringe cap on the center console.

 At this time, the driver turned the vehicle on and attempted

to leave the parking lot. LaBarre shouted, "police" and ordered

that the vehicle be turned off. Concerned that there would be

another attempt to leave the scene, LaBarre walked behind the

vehicle and approached the driver. Caponegro took up a position

at the passenger door.

 LaBarre requested the driver to step out of the vehicle and

to provide him with identification. He also inquired of the driver

why he and defendant were sitting in an empty parking lot. While

the driver was exiting the vehicle, LaBarre observed a hypodermic

needle on the floorboard. When a third police officer arrived at

 3 A-0349-15T2
the scene, LaBarre requested that he remain with the driver while

he spoke with defendant.

 LaBarre asked defendant the reason for her presence in the

lot, to which defendant responded they were "lost." LaBarre,

based upon his training and experience, did not believe defendant

and inquired further as to the reason for being in the lot to

which defendant replied by blurting out that it was "her dope,"

that she did not want the driver to get in trouble, and that she

"had everything and the dope was hers."

 LaBarre requested defendant exit the vehicle. Upon exiting,

a tan-colored pouch fell from defendant's lap into a cavity in the

passenger door. LaBarre asked if the narcotics defendant referred

to were in the pouch. Defendant replied, "they were." LaBarre

then asked defendant if he could look inside the pouch, to which

defendant responded in the affirmative. Inside the pouch were

several glassine folds of suspended heroin. Defendant was placed

under arrest.1

 After her arrest, defendant was transported to police

headquarters for processing. Since there was no female officer

present to conduct a search, LaBarre contacted a neighboring police

1
 A search of the vehicle's interior also took place based upon
the consent of the driver. That search is not relevant to our
determination.

 4 A-0349-15T2
department to request a female officer to assist. While waiting

for the female officer to arrive, defendant reached beneath her

shirt and removed a plastic bag containing several white pills.

Defendant admitted the pills were Xanax.

 Subsequent to defendant's indictment on two counts of third-

degree possession of a controlled dangerous substance (CDS), she

filed a motion seeking to suppress the evidence seized and the

statement she made to LaBarre. At the conclusion of the hearing,

Judge Robert J. Gilson denied both motions in a comprehensive,

well-reasoned, written opinion.2

 The judge found LaBarre credible in his testimony recounting

the events leading to defendant's arrest. The judge held that the

information from the citizen and the driver's attempt to "flee"

after defendant mouthed "cops," provided LaBarre with a reasonable

and articulable basis to stop the vehicle. Further, the judge

held that LaBarre's observations of the syringe cap on the center

console and the syringe needle on the floorboard provided him with

a reasonable and articulable suspicion to continue the

investigative stop. The judge concluded that while LaBarre had a

reasonable basis to request consent to "look into the pouch," he

did not provide defendant with the required notice of her right

2
 Defendant has not appealed the denial of the motion to suppress
her statements.

 5 A-0349-15T2
of refusal to sustain a valid consent search. State v. Johnson,

68 N.J. 349, 354 (1975). However, the judge held that the doctrine

of inevitable discovery applied as the pouch would have been

subject to a later search since the vehicle was to be impounded.

 When analyzing a warrantless search and seizure, we start

with the parameters defined by our Federal and State Constitutions.

These protections require police to first secure a warrant before

seizing a person or conducting a search of a home or a person.

State v. Watts, 223 N.J. 503, 513 (2015).

 [B]oth the Fourth Amendment to the United
 States Constitution and Article I, Paragraph
 7 of the New Jersey Constitution guarantee to
 New Jersey's citizens "[t]he right to walk
 freely on the streets of a city without fear
 of [an] arbitrary arrest[.]" State v. Gibson,
 218 N.J. 277[, 281] (2014). When evaluating
 the reasonableness of a detention, the
 "totality of circumstances surrounding the
 police-citizen encounter" must be considered.
 State v. Privott, 203 N.J. 16, 25 (2010)
 (quoting [State v. Davis, 104 N.J. 490, 504
 (1986)]).

 [State v. Coles, 218 N.J. 322, 343 (2014)
 (second alteration in original).]

 While the warrantless seizure of a person is "presumptively

invalid as contrary to the United States and the New Jersey

Constitutions," id. at 342 (quoting State v. Mann, 203 N.J. 328,

337 (2010)), there remains a critical "balance to be struck between

individual freedom from police interference and the legitimate and

 6 A-0349-15T2
reasonable needs of law enforcement." Id. at 343. A reviewing

court must determine whether the State has met its burden, by a

preponderance of the evidence, to establish the warrantless search

or seizure of an individual was justified in light of the totality

of the circumstances. See Illinois v. Gates, 462 U.S. 213, 238,

103 S. Ct. 2317, 2332, 76 L. Ed. 2d 527, 548 (1983).

 We first address defendant's argument that the investigatory

stop was not based upon a reasonable articulable decision. The

parameters for an investigatory stop are well defined.

 [A] police officer may conduct an
 investigatory stop of a person if that officer
 has "particularized suspicion based upon an
 objective observation that the person stopped
 has been or is about to engage in criminal
 wrongdoing." [Davis, supra, 104 N.J. at 504.]
 The stop must be reasonable and justified by
 articulable facts; it may not be based on
 arbitrary police practices, the officer's
 subjective good faith, or a mere hunch.

 [Coles, supra, 218 N.J. at 343 (citation
 omitted).]

 When reviewing whether the State has shown a valid

investigative detention, consideration of the totality of the

circumstances requires we "give weight to 'the officer's knowledge

and experience' as well as 'rational inferences that could be

drawn from the facts objectively and reasonably viewed in light

of the officer's expertise.'" State v. Citarella, 154 N.J. 272,

279 (1998) (quoting State v. Arthur, 149 N.J. 1, 10-11 (1997)).

 7 A-0349-15T2
"The fact that purely innocent connotations can be ascribed to a

person's actions does not mean that an officer cannot base a

finding of reasonable suspicion on those actions as long as 'a

reasonable person would find the actions are consistent with

guilt.'" Id. at 279-80 (quoting Arthur, supra, 149 N.J. at 11).

 Finally, we must remember the "touchstone" for evaluating

whether police conduct has violated constitutional protections is

"reasonableness." State v. Hathaway, 222 N.J. 453, 476 (2015)

(quoting State v. Judge, 275 N.J. Super. 194, 200 (App. Div.

1994)). The reasonableness of police conduct is assessed with

regard to circumstances facing the officers, who must make split

second decisions in a fluid situation. See State v. Bruzzese, 94

N.J. 210, 228 (1983), cert. denied, 465 U.S. 1030, 104 S. Ct.

1295, 79 L. Ed. 2d 695 (1984).

 Such encounters are justified only if the
 evidence, when interpreted in an objectively
 reasonable manner, shows that the encounter
 was preceded by activity that would lead a
 reasonable police officer to have an
 articulable suspicion that criminal activity
 had occurred or would shortly occur. No
 mathematical formula exists for deciding
 whether the totality of circumstances provided
 the officer with an articulable or
 particularized suspicion that the individual
 in question was involved in criminal activity.
 Such a determination can be made only through
 a sensitive appraisal of the circumstances in
 each case.

 8 A-0349-15T2
 [Davis, supra, 104 N.J. at 505 (emphasis
 added).]

Guided by these principles, we examine the facts and circumstances

presented in this case.

 Judge Gilson referenced the culmination of events which, when

considered in their totality, formed LaBarre's reasonable

articulable suspicion of criminal activity. As we find the

recitation by the judge of these facts to be consistent with the

hearing record, we need not repeat them at length herein. Suffice

it to state, we agree the totality of these facts presented display

that LaBarre's conduct during his initial encounter with defendant

resulted from more than a hunch. When taken together, the facts

demonstrate that LaBarre's perception that defendant was

potentially engaged in criminal activity was objectively

reasonable.

 Further, the request by LaBarre of defendant to exit the

vehicle was a continuum of a fluid investigation, especially after

LaBarre observed the syringe cap and the syringe in the vehicle.

See Coles, supra, 218 N.J. 343-44 (recognizing law enforcement's

need to respond to the fluidity of a street encounter where there

is reasonable suspicion of wrongdoing).

 Giving due weight to LaBarre's professional insight and

observations, we are satisfied there was a sufficient basis to

 9 A-0349-15T2
believe that defendant was engaged in criminal activity to warrant

his further investigation.

 Defendant further argues that the judge erred in employing

the doctrine of inevitable discovery to sustain the search. "The

exclusionary rule generally bars the State from introducing into

evidence the 'fruits' of an unconstitutional search or seizure."

State v. Shaw, 213 N.J. 398, 412-13 (2012) (quoting Wong Sun v.

United States, 371 U.S. 471, 485, 83 S. Ct. 407, 416, 9 L. Ed. 2d

441, 454 (1963)). "Under the exclusionary rule, 'the prosecution

is not to be put in a better position than it would have been in

if no illegality had transpired.'" State v. Smith, 212 N.J. 365,

388 (2012) (quoting Nix v. Williams, 467 U.S. 431, 443, 104 S. Ct.

2501, 2508, 81 L. Ed. 2d 377, 387 (1984)), cert. denied, ___ U.S.

___, 133 S. Ct. 1504, 185 L. Ed. 2d 558 (2013).

 An exception to the judicially-created exclusionary rule is

the inevitable discovery doctrine. Nix, supra, 467 U.S. at 444,

104 S. Ct. at 2509, 81 L. Ed. 2d at 387; Smith, supra, 212 N.J.

at 389. Under this doctrine, unlawfully obtained evidence is

admissible, if it "would inevitably have been discovered without

reference to the police error or misconduct, [because] there is

no nexus sufficient to provide a taint[.]" Nix, supra, 467 U.S.

at 448, 104 S. Ct. at 2511, 81 L. Ed. 2d at 390. The analysis

"ensures that the prosecution is not put in a worse position simply

 10 A-0349-15T2
because of some earlier police error or misconduct." Id. at 443,

104 S. Ct. at 2508, 81 L. Ed. 2d at 387; see also State v. Sugar,

100 N.J. 214, 237 (1985) (Sugar II) (deterrent purposes of the

exclusionary rule are not served by excluding evidence that would

have inevitably been discovered).

 In order to invoke the doctrine in New Jersey, the State must

show by clear and convincing evidence that:

 (1) proper, normal and specific investigatory
 procedures would have been pursued in order
 to complete the investigation of the case; (2)
 under all of the surrounding relevant
 circumstances the pursuit of those procedures
 would have inevitably resulted in the
 discovery of the evidence; and (3) the
 discovery of the evidence through the use of
 such procedures would have occurred wholly
 independently of the discovery of such
 evidence by unlawful means.

 [Sugar II, supra, 100 N.J. at 238.]

 In other words, the State must show that "had the illegality

not occurred, it would have pursued established investigatory

procedures that would have inevitably resulted in the discovery

of the controverted evidence, wholly apart from its unlawful

acquisition." Id. at 240; see also State v. Johnson, 120 N.J.

263, 290 (1990) (inevitable discovery applied where detective was

in process of preparing affidavit in support of search warrant

based on information independent of tainted source); State v.

Sugar, 108 N.J. 151, 157 (1987) (Sugar III) (body buried in shallow

 11 A-0349-15T2
ground behind house would have inevitably been discovered); State

v. Finesmith, 406 N.J. Super. 510, 523-24, (App. Div. 2009) (laptop

computer admissible under inevitable discovery exception).

 "[T]he central question to be addressed in invoking the

'inevitable discovery' rule 'is whether that very item of evidence

would inevitably have been discovered, not merely whether evidence

roughly comparable would have been so discovered.'" State v.

Worthy, 141 N.J. 368, 390 (1995) (quoting Wayne LaFave, Search and

Seizure, § 11.4(a), at 380 (1987)). However, "the State [does]

not have to prove clearly and convincingly 'under what precise

circumstances the [evidence] would have been inevitably

discovered.'" Smith, supra, 212 N.J. at 392 (quoting Sugar III,

supra, 108 N.J. at 158). "A number of possibilities may

cumulatively constitute clear and convincing evidence that the

evidence would be discovered." Sugar III, supra, 108 N.J. at 159.

 In applying the undisputed facts established at the

suppression hearing, we find that the State proved by clear and

convincing evidence the three elements of the inevitable discovery

doctrine.

 Defendant acknowledged ownership of the pouch and that the

pouch contained "dope." At a minimum, the pouch would have been

seized for further examination either through the execution of a

search warrant based upon probable cause or pursuant to an

 12 A-0349-15T2
inventory after the vehicle was impounded pursuant to the normal

police procedure. See Sugar II, supra, 100 N.J. at 238.3

 Alternatively, the State presented clear and convincing

evidence that defendant would have been arrested, independent of

the discovery of the heroin by unlawful means. Defendant's

admission that she possessed "the dope" and that the "dope" was

in the pouch in combination with the observations by LaBarre of

the syringe cap and syringe needle provided a sufficient basis for

probable cause to arrest.

 It is well established that the search incident to arrest

exception to the warrant requirement permits the police to seize

and search a container found in an arrestee's possession. State

v. Minitee, 210 N.J. 307, 318 (2012); see also State v. Oyenusi,

387 N.J. Super. 146, 154 (App. Div. 2006) (authority to search

arrestee and area within immediate control includes authority to

search a container found in arrestee's possession), certif.

denied, 189 N.J. 426 (2007).

3
 Predicated upon defendant's statement to LaBarre about the
pouch's contents, there was a "fair probability that contraband
or evidence of a crime" would be found in the pouch, thus
satisfying probable cause for the purpose of the issuance of a
search warrant. Gates, supra, 462 U.S. at 238-39, 103 S. Ct. at
2332, 76 L. Ed. 2d at 548.

 13 A-0349-15T2
 As such, the heroin would have been discovered in defendant's

possession during a search incident to arrest as the pouch was in

her immediate control if not in her actual possession.

 We are satisfied that the heroin seized from within the pouch,

obtained by an unlawful consent search, would inevitably have been

discovered without the police misconduct. The evidence was

therefore admissible and the motion to suppress was properly

denied.

 Affirmed.

 14 A-0349-15T2