SYLLABUS

(This syllabus is not part of the Court's opinion. It has been prepared by the Office of the Clerk for the convenience of the reader. It has been neither reviewed nor approved by the Court. In the interest of brevity, portions of an opinion may not have been summarized.)

**State v. Louis V. Williams (A-40-19) (083400)**

**(NOTE: The Court did not write a plenary opinion in this case. The Court affirms the judgment of the Appellate Division substantially for the reasons expressed in Judge Natali's opinion, published at 461 N.J. Super. 1 (App. Div. 2019).)**

**Argued October 14, 2020 -- Decided November 2, 2020**

**PER CURIAM**

The Court considers the Appellate Division's determination that evidence seized from defendant Louis V. Williams's home should have been suppressed.

Detective Estevez of the New Jersey State Police testified at a suppression hearing that, on March 19, 2016, he heard gunshots from a nearby neighborhood while in his office in Trenton. Dispatch reports indicated that the gunshots were fired at a nearby bar and that the suspected shooter was a Black male named "Louis" who had fled to, and lived at, a dwelling on Spring Street.

Estevez and Sergeant Sansone drove to the Spring Street dwelling, where they met a Trenton Police Department officer outside. Estevez testified that the structure appeared to be an attached row home; he was unsure whether it was a single-family home, a multi-family home, or a boarding house. According to Estevez, the front door was equipped with a lock but was unlocked at that time and swung open when he knocked on it.

The officers entered what Estevez described as a long hallway with a stairway leading to the second floor directly in front of him. Estevez noticed multiple doors to his left, all of which had padlocks on them, which led him to believe the building was being used as "a boarding house because usually boarding houses are multi-apartment dwellings." The officers then searched the common areas for weapons and the suspect. Estevez and Sansone then left the building and returned to their vehicle to search the surrounding area. They received a police dispatch report indicating that a crime scene was established at the bar; Estevez testified that he thus believed he was involved in an "active shooting" investigation.

Estevez and Sansone returned to Spring Street and re-entered the dwelling. Estevez proceeded to knock on two interior doors, one on the first floor and one on the

1

second floor, both of which were answered by female residents who denied having any male roommates. Estevez then went to the second floor's middle room door.

As he approached that room, Estevez heard movement and smelled marijuana through the door. He knocked on the door, announced that he was a police officer, and told the individual to answer the door.

Defendant opened the door, which swung inward toward a room Estevez stated was approximately eight feet by eight feet. According to Estevez, the smell of marijuana drastically increased when defendant opened the door, and defendant was sweating and breathing heavily. Estevez stated that while he was standing in the doorway, still in the common hallway, he looked into defendant's room as defendant went to get his wallet to provide identification. Estevez testified that, in light of safety concerns, he was closely watching defendant's hands and thus saw a small bag of marijuana next to the wallet, at which point he concluded defendant would be placed under arrest. Estevez testified that he stepped into defendant's room as defendant turned to provide the identification. Estevez saw on defendant's driver's license that defendant's name was Louis Williams. He then placed defendant under arrest for possession of marijuana, conducted a protective sweep of the bedroom, and applied for a warrant to search defendant's room for drugs, weapons, and other items. After obtaining the warrant, other police officers searched defendant's bedroom and seized a bag of marijuana and a gun.

The trial court denied defendant's motion to suppress the drugs and weapon. The court accepted Estevez's testimony as fact and determined that defendant did not have a privacy right as to the common hallway and that, in light of Estevez's plain-view observation from that lawfully accessed area, there was no unlawful search or seizure.

The Appellate Division reversed. 461 N.J. Super. 1, 20 (App. Div. 2019).

The court explained that, "to satisfy the plain view doctrine when this case was decided, the State was required to establish: 1) a police officer was 'lawfully in the viewing area'; 2) the officer 'discover[ed] the evidence "inadvertently"'; and 3) it was "'immediately apparent' to the police that the items in plain view were evidence of a crime, contraband, or otherwise subject to seizure." Id. at 11 (quoting State v. Mann, 203 N.J. 328, 341 (2010)). The court observed that the dispositive issue was thus "whether Estevez had a lawful right to be in the second floor hallway where he initially smelled the marijuana that led to his observations, defendant's arrest, and the issuance of the warrant prompting the seizure of the . . . gun." Ibid. To decide whether "Estevez was lawfully in that viewing area," the court explained that it had to "determine whether defendant had a reasonable expectation of privacy in the common hallway, such that he is entitled to the protections of the Fourth Amendment of the United States Constitution and Article I, Paragraph 7 of the New Jersey Constitution." Id. at 11-12.

2

Ultimately, the Appellate Division

> conclude[d] that because the police did not have a warrant, and the State failed to establish that the common areas of the Spring Street dwelling were open to the public, the officers' second entry that led to defendant's arrest and the seizure of the marijuana and gun was constitutionally impermissible. Therefore, the plain view doctrine does not justify the government's warrantless search. Thus, the State failed to carry its burden of establishing that an exception to the warrant requirement justified the entry into the home.
>
> [Id. at 19-20.]

The Court granted certification. 240 N.J. 429 (2020).

**HELD:** Based on the facts of this case, the Court affirms the judgment of the Appellate Division substantially for the reasons expressed in that court's opinion.

**AFFIRMED**.

**CHIEF JUSTICE RABNER and JUSTICES LaVECCHIA, ALBIN, PATTERSON, SOLOMON, and PIERRE-LOUIS join in this opinion. JUSTICE FERNANDEZ-VINA did not participate.**

# SUPREME COURT OF NEW JERSEY
## A-40 September Term 2019
### 083400

State of New Jersey,

Plaintiff-Appellant,

v.

Louis V. Williams,

Defendant-Respondent.

On certification to the Superior Court,
Appellate Division, whose opinion is reported at
461 N.J. Super. 1 (App. Div. 2019).

| Argued | Decided |
|--------|---------|
| October 14, 2020 | November 2, 2020 |

Valeria Dominguez, Deputy Attorney General, argued the cause for appellant (Gurbir S. Grewal, Attorney General, attorney; Valeria Dominguez, of counsel and on the briefs).

Michele E. Friedman, Assistant Deputy Public Defender, argued the cause for respondent (Joseph E. Krakora, Public Defender, attorney; Michele E. Friedman, of counsel and on the briefs).

Alexander Shalom argued the cause for amicus curiae American Civil Liberties Union of New Jersey (American Civil Liberties Union of New Jersey Foundation, attorneys; Alexander Shalom, Ky'Eisha Penn, Karen Thompson, and Jeanne LoCicero, on the brief).

1

Nicholas C. Harbist argued the cause for amicus curiae Association of Criminal Defense Lawyers of New Jersey (Blank Rome, attorneys; Nicholas C. Harbist, on the brief).

## PER CURIAM

Based on the facts of this case, the Court affirms substantially for the reasons expressed in Judge Natali's opinion, reported at 461 N.J. Super. 1 (App. Div. 2019).

CHIEF JUSTICE RABNER and JUSTICES LaVECCHIA, ALBIN, PATTERSON, SOLOMON, and PIERRE-LOUIS join in this opinion. JUSTICE FERNANDEZ-VINA did not participate.

2