**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1262-24

STATE OF NEW JERSEY,

    Plaintiff-Appellant,

v.

KING H. JOHNSON,

    Defendant-Respondent.

_____

> Argued May 7, 2025 – Decided May 22, 2025
>
> Before Judges Rose and DeAlmeida.
>
> On appeal from an interlocutory order of the Superior Court of New Jersey, Law Division, Salem County, Indictment No. 24-02-0054.
>
> Matthew M. Bingham, Assistant Prosecutor, argued the cause for appellant (Kristin J. Telsey, Salem County Prosecutor, attorney; Matthew M. Bingham, of counsel and on the brief).
>
> Colin Sheehan, Assistant Deputy Public Defender, argued the cause for respondent (Jennifer N. Sellitti, Public Defender, attorney; Colin Sheehan, of counsel and on the brief).

PER CURIAM

By leave granted, the State appeals from the October 18, 2024 Law Division order granting defendant King H. Johnson's motion to suppress evidence obtained during a pedestrian investigatory stop. We affirm.

I.

In 2024, a grand jury charged defendant with: second-degree possession of a weapon during the commission of a controlled dangerous substance (CDS) offense, N.J.S.A. 2C:39-4.1(a); second-degree unlawful possession of a weapon, N.J.S.A. 2C:39-5(b)(1); fourth-degree unlawful possession of a large capacity ammunition magazine, N.J.S.A. 2C:39-3(j); third-degree possession of CDS, N.J.S.A. 2C:35-10(a)(1); third-degree possession of CDS with intent to distribute, N.J.S.A. 2C:35-5(b)(5); and second-degree possession of a weapon by a certain person, N.J.S.A. 2C:39-7(b)(1). The charges arose after a police officer stopped defendant on a sidewalk and found him in possession of a loaded weapon following a 9-1-1 call that several people were fighting in a convenience store. The officer's encounter with defendant was recorded by the officer's body worn camera.

A-1262-24

Defendant moved to suppress the evidence obtained during the stop. He argued the officer lacked the reasonable suspicion of criminal activity required by Terry v. Ohio, 392 U.S. 1 (1968), rendering the stop unconstitutional.

The motion court held an evidentiary hearing at which Penns Grove Police Officer Christopher Hemple, who stopped defendant, testified as follows. At about 5:45 p.m. on December 15, 2023, Hemple, while at police headquarters, received a transmission from the dispatcher that a 9-1-1 caller had reported several Black males were engaged in a fight in a convenience store. The dispatcher did not state that the fighting parties were armed or that the fight involved weapons. Hemple entered his patrol vehicle and responded to the scene approximately one-half mile away.

As Hemple approached the scene, he observed several people exiting the store, entering its parking lot, and dispersing in different directions. To Hemple, the scene "just seemed like it was . . . a little bit of a disturbance that was settling down."

Hemple's attention was drawn to a Black male, later identified as defendant, who was exiting the store as the officer pulled into the parking lot. Defendant, who was walking on a sidewalk in the direction of the approaching officer, had a ski mask around his neck and his hand inside a small bag strapped

across his chest. According to Hemple, in recent years a trend has developed of people using small bags of the type defendant was wearing to carry firearms. Hemple testified the bags are considered desirable for this purpose because they easily conceal a handgun and have clasps that disconnect quickly to allow the weapon to be discarded during a police chase. Based on his training and experience, the officer suspected defendant was carrying a firearm in the bag.

Hemple ordered defendant to stop and take his hand out of the bag. Defendant complied with those orders, but the officer "noticed that he quickly tried to conceal whatever the object was that was in the bag by . . . trying to attempt to zipper the bag." Hemple ordered defendant to sit down and not to put his hand near the bag. Defendant complied with those orders. As defendant sat down on the curb, Hemple illuminated defendant with a flashlight and saw a handgun sticking out of defendant's bag. The officer disarmed defendant and arrested him. Approximately fifteen to thirty seconds passed from the time Hemple exited the patrol vehicle to defendant's arrest.

The video recording of Hemple's encounter with defendant was played for the court. Hemple verified the accuracy of what was depicted in the video. The officer's written report of the incident also was admitted as evidence.[1]

After the close of the hearing, the court issued an oral decision granting defendant's motion. The court found Hemple effectuated an investigatory stop of defendant because he was not free to leave, but concluded Hemple did not have reasonable suspicion that defendant was engaged in criminal activity justifying the investigatory stop under Terry. The court explained:

> [T]his [d]efendant was walking out of the store as any patron would do, he happened to be a patron there. He's walking on the sidewalk. . . . Does the fact that he's putting his hand near or on a bag, in essence a man handbag, is that enough to create the reasonable suspicion standard to put this individual on the curb? The [c]ourt doesn't find that it does. I do not find that there's a reasonable suspicion that this [d]efendant, when he was walking . . . on the sidewalk – he wasn't running. He wasn't threatening. He wasn't yelling. . . . [T]his officer is called out to the scene, not to an armed robbery, not to a gun case. There's no allegation that guns were at all involved in this scene. When he gets there, there is no fight. There is no fight in the parking lot. There is no fight occurring in the . . . store.

---

[1] Officer Hemple did not testify with respect to the CDS charges against defendant. The record does not reveal whether the bag also contained CDS.

A-1262-24

The court found denying the motion "would mean that any time that police are called to a store . . . when there's people walking around [police] can just order people around and put them on the ground and do searches on them[.] No, it doesn't work that way." An October 18, 2024 order memorialized the motion court's decision.[2]

The State raises the following arguments.

POINT I

THE OFFICER HAD A REASONABLE AND ARTICULABLE SUSPICION THAT THE DEFENDANT HAD BEEN ENGAGED IN CRIMINAL ACTIVITY THAT WARRANTED THE BRIEF INVESTIGATORY DETENTION OF THE DEFENDANT.

POINT II

AS THE DETENTION OF THE DEFENDANT WAS JUSTIFIED, THE HANDGUN WAS FOUND IN PLAIN VIEW OF THE OFFICER.

---

[2] The court subsequently clarified that Hemple directed defendant to sit on a curb and did not put him on the ground. The court also found that if the stop was constitutional, Hemple's observation of the handgun in defendant's bag would fall within the plain view exception to the warrant requirement. See State v. Mann, 203 N.J. 328, 341 (2010). Because we affirm the motion court's order granting defendant's motion to suppress, we need not address the plain view exception.

A-1262-24

## II.

Our scope of review of the motion court's suppression order is well established. Our review of the court's factual findings after a hearing is "exceedingly narrow." State v. Locurto, 157 N.J. 463, 470 (1999) (citing State v. Johnson, 42 N.J. 146, 161-62 (1964)). Our deference includes the motion court's findings based on video recording or documentary evidence. See State v. S.S., 229 N.J. 360, 374-81 (2017) (clarifying the deferential and limited scope of appellate review of factual findings based on video evidence); see also State v. McNeil-Thomas, 238 N.J. 256, 271-72 (2019). Deference is afforded because the court's findings "are often influenced by matters such as observations of the character and demeanor of witnesses and common human experience that are not transmitted by the record." Locurto, 157 N.J. at 474. We must defer to those findings so long as they are supported by sufficient credible evidence in the record. State v. Nelson, 237 N.J. 540, 551 (2019) (quoting In Interest of J.A., 233 N.J. 432, 445 (2018)). By contrast, the court's interpretation of the law and the legal "consequences that flow from established facts" are reviewed de novo. State v. Gamble, 218 N.J. 412, 425 (2014).

Both the United States and New Jersey Constitutions protect citizens against unreasonable searches and seizures. See U.S. Const. amend. IV; N.J.

Const. art. I, ¶ 7. The parties agree that the officer's encounter with defendant was an investigatory stop, which constitutes a seizure under both the federal and State constitutions. An investigatory stop or detention, sometimes referred to as a Terry stop, involves a temporary seizure that restricts a person's movement. A Terry stop implicates a constitutional requirement that there be "'specific and articulable facts which, taken together with rational inferences from those facts,' give rise to a reasonable suspicion of criminal activity." State v. Elders, 192 N.J. 224, 247 (2007) (quoting State v. Rodriguez, 172 N.J. 117, 126 (2002)).

The State has the burden to establish that a stop was valid. Mann, 203 N.J. at 337-38; State v. Pineiro, 181 N.J. 13, 19-20 (2004). If there was no reasonable suspicion of criminal activity to justify the stop, evidence discovered as a result of the stop is subject to exclusion. State v. Chisum, 236 N.J. 530, 546 (2019).

To determine whether reasonable suspicion existed, a judge must consider the totality of the circumstances, viewing the "whole picture" rather than taking each fact in isolation. Nelson, 237 N.J. at 554 (quoting State v. Stovall, 170 N.J. 346, 361 (2002)). Investigatory stops are justified "if the evidence, when interpreted in an objectively reasonable manner, shows that the encounter was preceded by activity that would lead a reasonable police officer to have an

A-1262-24

articulable suspicion that criminal activity had occurred or would shortly occur."

State v. Davis, 104 N.J. 490, 505 (1986).

> A court must first consider the officer's objective observations. The evidence collected by the officer is "seen and weighed not in terms of library analysis by scholars, but as understood by those versed in the field of law enforcement. [A] trained police officer draws inferences and makes deductions . . . that might well elude an untrained person. The process does not deal with hard certainties, but with probabilities." Second, a court must determine whether the evidence "raise[s] a suspicion that the particular individual being stopped is engaged in wrongdoing."
>
> [Id. at 501 (quoting United States v. Cortez, 449 U.S. 411, 418 (1981)) (alterations in original).]

The State argues the motion court erred because: (1) it was reasonable for Hemple to assume defendant was involved in the fight because the officer observed defendant leaving the convenience store shortly after the dispatch reporting that a fight was taking place in the store; (2) in the officer's experience the bag defendant wore and into which he had inserted his hand was commonly used to carry a weapon; and (3) defendant attempted to zipper the bag shut after Hemple ordered him to move his hand away from the bag.[3] These factors, the

---

[3] The State also argues that defendant turned his body away from Hemple in an attempt to conceal the bag. Hemple, however, did not testify that defendant turned his body to conceal the bag and the court made no finding with respect to defendant turning his body away from the officer as an act of concealment.

9

State argues, when considered together constituted reasonable suspicion defendant had engaged or was about to engage in criminal activity.

The motion court found that Hemple observed conduct commonly associated with non-criminal activity, whether considered individually or collectively. The court's findings of fact are well supported by the record and common experience. As defendant argued before the motion court, many patrons of a convenience store place items they just purchased in a bag as they exit the building and walk away from the premises. Zippering a bag after placing an item in it is a common practice to prevent the item from falling out of the bag. We agree those acts do not suggest criminal activity.

Hemple was aware that bags of the type worn by defendant were increasingly used to carry a firearm. This knowledge alone, however, is insufficient to constitute reasonable suspicion of criminal activity on the part of every person the officer encounters placing something in such a bag. To lawfully seize defendant it was necessary for Hemple to connect defendant's apparent placement of an object in his bag with criminal activity. Nothing in the record establishes that connection.

Defendant's match of the vague physical description transmitted by the dispatcher is an insufficient basis on which to justify the investigatory stop. The

10

only information on which Hemple was acting was a dispatch report that several Black males were involved in a fight in a convenience store. In State v. Nyema, 249 N.J. 509 (2022), police received a dispatch that two Black males, one with a gun, had robbed a convenience store. Id. at 516. An officer driving to the scene saw, when he was approximately three-quarters of a mile from the store, cars approaching from the opposite direction. Ibid. Using a spotlight mounted on the patrol car, the officer illuminated the interior of the approaching vehicles. Id. at 516-17. The occupants of the second car, three Black males, did not respond to the light, looking straight ahead. Id. at 517. This contrasted with the reaction of the occupants of the first vehicle, who demonstrated "alarm or annoyance" at the light. Ibid. The officer stopped the second vehicle, which contained the defendant. Ibid. The occupants were arrested for possession of a stolen vehicle and were later charged with robbery of the store. Id. at 518.

The Court found that the information possessed by the officer at the time of the stop did not constitute reasonable suspicion of criminal activity. Id. at 531. As the Court explained:

> Certainly, race and sex – when taken together with other, discrete factors – can support reasonable and articulable suspicion. But here, the initial description did not provide any additional physical descriptions such as the suspects' approximate heights, weights, ages, clothing worn, mode of transportation, or any

other identifying feature that would differentiate the two Black male suspects from any other Black men in New Jersey. That vague description, quite frankly, was "descriptive of nothing."

[Id. at 531 (quoting State v. Caldwell, 158 N.J. 452, 468 (1999) (Handler, J., concurring)).]

The Court continued,

[i]f that description alone were sufficient to allow police to conduct an investigatory stop of defendants' vehicle, then law enforcement officers would have been permitted to stop every Black man within a reasonable radius of the robbery. Such a generic description that encompasses each and every man belonging to a particular race cannot, without more, meet the constitutional threshold of individualized reasonable suspicion.

[Id. at 531-32.][4]

The State argues that unlike in Nyema, defendant was on the premises of the location of the reported criminal activity and was placing his hand in a bag the officer knew was commonly used to carry a handgun. These facts, the State argues, when combined with defendant's match of the physical description are sufficient to constitute reasonable suspicion of criminal activity and it was error for the motion court to conclude otherwise. The motion court, however, had the

---

[4] The Court discounted the relevancy of the absence of reaction of the occupants of the car to the spotlight's glare. Id. at 533-34.

opportunity to evaluate Hemple's testimony and review the video recording before it found the acts observed by the officer were not indicative of criminal behavior and, therefore, insufficient to constitute reasonable suspicion. Applying the deferential standard we must accord to the motion court's decision, we find no basis on which to disturb the grant of defendant's motion to suppress.

We agree with the motion court's conclusion that while defendant was on the premises where criminal activity reportedly had recently occurred, Hemple observed no acts by defendant suggesting he had engaged or was about to engage in criminal activity. The dispatcher did not state that the participants of the fight were armed with handguns or using weapons. The concept of defendant having a handgun was introduced by Hemple based on the type of bag defendant was wearing and the way he was holding his hand as he appeared to place something in the bag. We recognize, as did the motion court, officers must make "split second decisions." But, Hemple merely had a hunch defendant was armed. Although the officer's hunch was correct, it was constitutionally insufficient to justify an investigatory stop of defendant.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

*M.C. Harley*

Clerk of the Appellate Division

13                                                    A-1262-24