**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1053-19T3

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

BRETT J. LANDES,

     Defendant-Appellant.

_____

          Submitted December 9, 2020 – Decided January 15, 2021

          Before Judges Whipple, Rose, and Firko.

          On appeal from the Superior Court of New Jersey, Law Division, Burlington County, Indictment No. 18-03-0038.

          Hegge & Confusione, LLC, attorneys for appellant (Michael Confusione, of counsel and on the briefs).

          Gurbir S. Grewal, Attorney General, attorney for respondent (Catlin A. Davis, Deputy Attorney General, of counsel and on the brief).

PER CURIAM

Defendant Brett J. Landes appeals from an October 24, 2019, judgment of conviction (JOC) following a jury trial. We affirm but remand to correct the JOC.

I.

We glean these facts from the trial record. On January 17, 2017, defendant was traveling southbound on the New Jersey Turnpike in his Mercedes SUV hatchback. He entered a construction zone where traffic was funneled into a single, left lane behind a vehicle operated by Vernon McCallum who was traveling home to North Carolina. According to McCallum, defendant repeatedly drove close to his bumper and blew his horn. Defendant contended that McCallum initiated an altercation by throwing objects at his car as he drove by. After passing the construction zone, McCallum moved to the right lane so that defendant could pass him.

Defendant continued travelling in the left lane alongside McCallum side-by-side and began shouting at McCallum. Initially, McCallum ignored defendant, but then he observed defendant roll down his window, turn on the interior light, and point a gun at him in an apparent episode of road rage. In response, McCallum "slammed on [his] brakes" because he was scared and did

A-1053-19T3

not know "what [defendant's] motive was" for pointing the gun. Defendant testified at trial that he never pointed a gun at McCallum.

Thereafter, McCallum called 9-1-1 to report the incident claiming there was a "road rage guy," driving a gray Mercedes Benz with a Virginia license plate. McCallum continued to follow defendant while on the phone with the operator so that State Troopers would be able to find defendant. Ultimately, State Troopers Finney and Kaminski responded to the 9-1-1 call, located defendant and McCallum, and initiated a stop of defendant's vehicle. McCallum also stopped to give a statement to the Troopers.

Troopers Finney and Kaminski removed defendant from his vehicle, walked him to the hood, and frisked him for weapons. The frisk did not reveal a weapon on defendant's person; however, a sweep of defendant's vehicle by Trooper Finney using a flashlight uncovered a handgun on the floor behind the driver's seat in a partially unzipped black bag. Defendant continued to lean against the hood of his vehicle while speaking to Trooper Kaminski. The Troopers claimed the handgun was loaded. Defendant disputed this and contended the handgun was unloaded and secured in a closed carrying bag with the magazines stored in a separate zippered compartment. Trooper Kaminski

A-1053-19T3

placed defendant under arrest, read him his Miranda[1] rights, and put him in the back seat of the police vehicle. Defendant signed the back of the Miranda card. After returning to defendant's car, Trooper Kaminski secured the handgun and searched the bag, which contained two knives and ammunition.[2] Trooper Finney's digital in-car video record (DIVR) captured the stop.

Defendant was transported to Moorestown police headquarters where he consented to undergo a formal interview. Trooper Kaminski and Detective Philip Conza were present for the interview. Defendant rendered different versions of what occurred that night, at first claiming he only pointed a tire stick at McCallum. Defendant then changed his story and claimed he pointed a knife. Ultimately defendant admitted he pointed a handgun because McCallum was "brake checking" him, threw a bottle out of his car window, defendant felt "threatened," and McCallum "needed to stop doing what he was doing." Defendant had a permit to carry the handgun from his home state of Virginia but did not have a carry permit in New Jersey.

---

[1] Miranda v. Arizona, 384 U.S. 436 (1966).

[2] The ammunition included fifteen hollow-point bullets in the handgun's magazine and a box of hollow-point bullets.

On March 6, 2018, defendant was indicted for second-degree unlawful possession of a weapon, N.J.S.A. 2C:39-5(b) (count one); fourth-degree possession of prohibited devices (hollow-point bullets), N.J.S.A. 2C:39-3(f) (count two); and fourth-degree aggravated assault by pointing a firearm, N.J.S.A. 2C:12-1(b)(4) (count three).

Defendant moved to suppress his statements made to police at headquarters. He claimed Trooper Kaminski and Detective Conza failed to "scrupulously honor" his invocation of his right to counsel. On August 10, 2018, the trial court conducted a <u>Miranda</u> hearing to determine whether defendant waived his right to counsel during his conversation with Trooper Kaminski and Detective Conza. The court heard testimony and oral argument on defendant's motion to suppress his statements.

Defendant and Detective Conza testified at the <u>Miranda</u> hearing. Testimony at the suppression hearing revealed that at the beginning of the interview, before being advised of his rights, defendant asked Trooper Kaminski and Detective Conza, "do I need an attorney?" Detective Conza responded by stating, "That's up to you. I'm just going to read these to you and you can make that decision." Thereafter, Detective Conza read defendant his <u>Miranda</u> rights. Defendant made several similar statements such as "depending on whether I

leave today, does that determine whether I need an attorney or not?"; "I don't even know how to even get an attorney here."; and, "I mean, so do I need a lawyer now (inaudible)?".

The following exchange took place between Detective Conza and defendant:

> Detective Conza: Yeah. Well, for here now presently, we are going to conduct the interview. You had mentioned a lawyer. I mean is that -- it's --
>
> [Defendant]: I would -- I would probably rather have somebody that knows a little bit more about --
>
> Detective Conza: I --
>
> [Defendant]: I have no idea about the law.

Detective Conza reminded defendant of the seriousness of the charges, his right to request an attorney, and his ability to exercise that right. After the conclusion of the hearing on August 23, 2018, the trial court issued a written opinion and ruled that defendant made an ambiguous request for counsel, but the totality of the circumstances indicated defendant's clear intent to waive his right to counsel by continuing to speak with law enforcement officers.

Defendant also moved to suppress evidence seized from his car during the traffic stop. He argued both the traffic stop and the subsequent search of his vehicle were unlawful. On September 6, 2018, the trial court heard testimony

and oral argument on defendant's motion to suppress evidence found inside his vehicle. Defendant and Trooper Finney testified at the hearing. In denying defendant's motion to suppress the physical evidence in a written decision entered on September 28, 2018, the trial court noted defendant was stopped based on a reasonable suspicion he was armed and that he had threatened McCallum with a handgun. The trial court determined Trooper Finney acted within the scope of a protective sweep by conducting a search of defendant's vehicle of the areas accessible from the driver's seat. And, the handgun and bag were in "plain view."

Prior to trial, the State moved in limine to preclude defense counsel from introducing evidence of McCallum's six previous criminal convictions, including drug offenses. The trial court granted the State's motion in part and allowed defense counsel to cross-examine McCallum as to three of his prior convictions and ruled the other three convictions were inadmissible for impeachment purposes. Defendant was tried before a jury. After the State rested, defendant moved for a judgment of acquittal, which was denied by the trial court.

The jury found defendant guilty on all three counts of the indictment. Defendant was sentenced to five years' imprisonment with a forty-two month

parole disqualifier under the Graves Act, N.J.S.A. 2C:43-6(c), on count one; a one-year concurrent term of imprisonment on count two; and a concurrent term of imprisonment of eighteen months, with an eighteen-month parole disqualifier, under the Graves Act, on count three.  This appeal followed.

On appeal, defendant argues:

POINT I

TH TRIAL COURT ERRED IN DENYING DEFENDANT'S MOTION TO SUPPRESS STATEMENTS MADE TO POLICE.

POINT II

THE TRIAL COURT ERRED IN DENYING DEFENDANT'S MOTION TO SUPPRESS EVIDENCE SEIZED FROM HIS CAR.

POINT III

THE TRIAL COURT ERRED IN FAILING TO INSTRUCT THE JURY ON THE LIMITATION OF LIABILITY OF THE UNLAWFUL POSSESSION OFFENSE SET FORTH BY N.J.S.A. 2C:39-6 (Plain Error; Not Raised Below).

POINT IV

THE TRIAL COURT ERRED IN PRECLUDING IN PART DEFENDANT'S CROSS-EXAMINATION BEFORE THE JURY OF THE PRIMARY STATE WITNESS, THE ALLEGED VICTIM, AT TRIAL.

POINT V

THE TRIAL COURT ERRED IN DENYING
DEFENDANT'S MOTION FOR ACQUITTAL.

POINT VI

DEFENDANT'S SENTENCE IS IMPROPER AND
EXCESSIVE.

Having reviewed the facts in light of the applicable principles of law, we find no merit in defendant's arguments.

II.

We first address defendant's argument that the trial court erred in denying his motion to suppress statements made to the police. In reviewing a motion to suppress, we "must uphold the factual findings underlying the trial court's decision so long as those findings are supported by sufficient credible evidence in the record." State v. Elders, 192 N.J. 224, 243 (2007) (citation and internal quotation marks omitted), see also, State v. Tillery, 238 N.J. 293, 314 (2019. However, the trial court's application of the law to the factual findings is not given the same deference. State v. Handy, 206 N.J. 39, 45 (2011).

When a defendant challenges a statement made during a police interrogation, the State must prove beyond a reasonable doubt that the waiver of

the defendant's <u>Miranda</u> rights "was knowing, intelligent, and voluntary in light of all the circumstances." <u>State v. Presha</u>, 163 N.J. 304, 313 (2000). If an individual "indicates in any manner and at any stage of the process that he wishes to consult with an attorney before speaking there can be no questioning." <u>Miranda</u>, 384 U.S. at 444-45.

"[W]hen 'determining the validity of a <u>Miranda</u> waiver,' trial courts must decide 'whether the suspect understood that he did not have to speak, the consequences of speaking, and that he had the right to counsel before doing so if he wished.'" <u>State v. A.M.</u>, 237 N.J. 384, 397 (2019) (quoting <u>State v. Nyhammer</u>, 197 N.J. 383, 402 (2009)). Our Supreme Court has relied on the fact that:

> <u>Miranda</u> does not require that the police supply a suspect with a flow of information to help him calibrate his self-interest in deciding whether to speak or stand by his rights because the additional information could affect only the wisdom of a <u>Miranda</u> waiver, not its essentially voluntary and knowing nature.
>
> [<u>Nyhammer</u>, 197 N.J. at 407 (citations omitted).]

Our Supreme Court has also held that "a suspect need not be articulate, clear, or explicit in requesting counsel; any indication of a desire for counsel, however ambiguous, will trigger entitlement to counsel." <u>State v. Reed</u>, 133 N.J. 237, 253 (1993). To determine whether an individual has invoked his or

 A-1053-19T3

her right to counsel, our courts employ a "totality of the circumstances approach that focuses on the reasonable interpretation of [the] defendant's words and behaviors." State v. Diaz-Bridges, 208 N.J. 544, 564 (2011), rev'd on other grounds, 229 N.J. 360 (2017).

Should a suspect's

> words amount to even an ambiguous request for counsel, the questioning must cease, although clarification is permitted; if the statements are so ambiguous that they cannot be understood to be the assertion of a right; if the statements are so ambiguous that they cannot be understood to be the assertion of a right, clarification is not only permitted but needed.
>
> [State v. Alston, 204 N.J. 614, 624 (2011).]

In responding to an ambiguous statement, the officer must limit himself or herself to clarification, "not questions that operate to[] delay, confuse, or burden the suspect in his assertion of his rights." State v. Johnson, 120 N.J. 263, 283 (1990) (citation omitted).

Defendant argues he made, at the very least, "an ambiguous request" for an attorney that was not "scrupulously honored" by Detective Conza. Although defendant did not point-blank ask for an attorney, his statements that he would "probably rather have someone that knows a little more about the law" and "I

11

know nothing about the law," amounted "in combination arguably to an assertion of [his] right to counsel" as found by the trial court.

"Video-recorded evidence is reviewed under the same standard." State v. Hagans, 233 N.J. 30, 38 (2018) (citing State v. S.S., 229 N.J. 360, 381 (2017)). Appellate courts review video-recorded evidence for clear error because "[p]ermitting appellate courts to substitute their factual findings for equally plausible trial court findings is likely to 'undermine the legitimacy of the [trial] courts in the eyes of litigants, multiply appeals by encouraging appellate retrial of some factual issues, and needlessly reallocate judicial authority.'" S.S., 229 N.J. at 380-81 (quoting Fed. R. Civ. P. 52(a) advisory committee's note to 1985 amendment) (second alteration in original). As our Supreme Court stated, "the . . . clearly erroneous standard of appellate review for factual findings based on a video recording or documentary evidence . . . promote[s] principles of fairness, efficiency, and judicial economy in our system of justice." Id. at 381.

However, at the suppression hearing, the trial court had the benefit of the video recording of defendant's interview and the testimony of Detective Conza, who made significant efforts to ensure defendant understood his rights. If a suspect is merely seeking advice from the officers, then questioning does not have to end. See State v. Messino, 378 N.J. Super. 559, 578 (App. Div. 2005)

(holding questioning did not need to cease because the statement "[d]o you think I need a lawyer?" was an inquiry distinguishable from requests for counsel such as "maybe I should have an attorney" and "I had better talk to a lawyer").

The trial court was correct in finding that defendant did not invoke his right to counsel by merely asking if he needed an attorney. Under the totality of the circumstances, we discern no basis for disturbing the trial court's conclusion that defendant waived his right to counsel knowingly, intelligently, and voluntarily.

III.

We next address defendant's argument that the trial court erred in denying his motion to suppress the evidence seized from his vehicle. We reiterate that "[a]ppellate review of a motion judge's factual findings in a suppression hearing is highly deferential." State v. Gonzales, 227 N.J. 77, 101 (2016) (citing State v. Hubbard, 222 N.J. 249, 262 (2015)). "'[A]n appellate court reviewing a motion to suppress must uphold the factual findings underlying the trial court's decision so long as those findings are supported by sufficient credible evidence in the record.'" State v. Rockford, 213 N.J. 424, 440 (2013) (alteration in original) (quoting State v. Robinson, 200 N.J. 1, 15 (2009)).

"Those findings warrant particular deference when they are 'substantially influenced by [the trial judge's] opportunity to hear and see the witnesses and to have the "feel" of the case, which a reviewing court cannot enjoy.'" Ibid. (alteration in original) (quoting Robinson, 200 N.J. at 15). "Thus, appellate courts should reverse only when the trial court's determination is 'so clearly mistaken "that the interests of justice demand intervention and correction."'" State v. Gamble, 218 N.J. 412, 425 (2014) (quoting Elders, 192 N.J. at 244).

Here, defendant's vehicle was lawfully stopped "based on reasonable and articulable suspicion that an offense . . . has been or is being committed." State v. Amelio, 197 N.J. 207, 211 (2008) (quoting State v. Carty, 170 N.J. 632, 639-640, modified by 174 N.J. 351 (2002)). This includes "the facts known to the officers from personal observation," Alabama v. White, 496 U.S. 325, 330 (1990), and the information known to or communicated by police dispatch. State v. Crawley, 187 N.J. 440, 457 (2006). See also State v. Stovall, 170 N.J. 346, 364-65 (2002) (finding a detective's personal observations of the defendant and other suspects supported a finding of reasonable suspicion).

Moreover, in order for an investigatory stop of an automobile to be valid, "[t]he State must show the stop was 'based on specific and articulable facts which, taken together with rational inferences from those facts, give rise to a

14

reasonable suspicion of criminal activity.'" State v. Alessi, 240 N.J. 501, 518 (2020) (quoting State v. Mann, 203 N.J. 328, 338 (2010)). Reasonable suspicion is a "lower standard" than probable cause, Stovall, 170 N.J. at 356, and requires a reviewing court utilize an objective test to "assess whether 'the facts available to the officer at the moment of the seizure or the search warrant a [person] of reasonable caution in the belief that the action taken was appropriate.'" Mann, 203 N.J. at 338 (quoting State v. Pineiro, 181 N.J. 13, 21 (2004)). A court evaluating the constitutionality of an investigatory traffic stop must evaluate the totality of the circumstances to determine whether the requisite reasonable suspicion existed. Alessi, 240 N.J. at 518.

Here, the reasonable suspicion for an investigatory stop then blossomed into probable cause for a warrantless arrest in the matter under review. The Troopers had a reasonable suspicion that defendant was armed and could pose a danger to their safety. Defendant's vehicle matched the description of the vehicle involved in the 9-1-1 call describing the road rage incident. We are not persuaded by the fact that a frisk of defendant's person did not reveal a weapon. As our Supreme Court highlighted in State v. Gamble:

> The officers' reasonable suspicion that there was a gun in the van that would be within easy reach when defendant . . . returned to the vehicle[] and the officers' reasonable concern for their safety and the safety of

others did not evaporate when they failed to find a weapon . . . on defendant . . . .

[218 N.J. at 432-33 (emphasis added).]

We conclude the Troopers were justified in conducting a protective sweep of the passenger compartment of the vehicle. Once defendant was removed from the vehicle, and it was clear the handgun defendant was suspected of pointing at McCallum was not on defendant's person, it was reasonable to conclude the weapon was still in the vehicle. Therefore, it was lawful for the Troopers to conduct a limited protective sweep of the passenger compartment of the vehicle. After shining his flashlight into the interior of defendant's vehicle to conduct the protective sweep, the handgun was immediately observed protruding out of the bag by Trooper Kaminski in plain view on the floor behind the driver's seat. The Troopers did not exceed the scope of the permissible protective sweep at the time the handgun and bag were observed in plain view. Therefore, the trial court properly denied defendant's motion to suppress physical evidence.

## IV.

For the first time on appeal, defendant argues the trial court erred in failing to instruct the jury on exceptions to N.J.S.A. 2C:39-5 that would potentially limit defendant's guilt on the unlawful possession offense. In particular, defendant claims that if the trial court had instructed the jury in accord with

N.J.S.A. 2C:39-6(f) and N.J.S.A. 2C:39-6(g), then the jury could have found defendant not guilty of unlawful possession of the firearm. Since defendant did not raise this issue before the trial court, we review under the plain error standard. R. 2:10-2.

N.J.S.A. 2C:39-6 contemplates several exceptions to the unlawful possession of weapons statute, N.J.S.A. 2C:39-5. Defendant contends all four exemptions in N.J.S.A. 2C:39-6(f) and the exemption in N.J.S.A. 2C:39-6(g) apply. N.J.S.A. 2C:39-6(f) states:

> Nothing in subsections b., c., and d. of N.J.S.A. 2C:39-5 shall be construed to prevent:
>
> (1) A member of any rifle or pistol club organized in accordance with the rules prescribed by the National Board for the Promotion of Rifle Practice, in going to or from a place of target practice, carrying firearms necessary for target practice, provided that the club has filed a copy of its charter with the superintendent and annually submits a list of its members to the superintendent and provided further that the firearms are carried in the manner specified in subsection g. of this section;
>
> (2) A person carrying a firearm or knife in the woods or fields or upon the waters of this State for the purpose of hunting, target practice or fishing, provided that the firearm or knife is legal and appropriate for hunting or fishing purposes in this state and the person has in possession a valid hunting license, or, with respect to fresh water fishing, a valid fishing license;

17

(3) A person transporting any firearm or knife while traveling:

> (a) Directly to or from any place for the purpose of hunting or fishing, provided the person has in possession a valid hunting or fishing license; or
>
> (b) Directly to or from any target range, or other authorized place for the purpose of practice, match, target, trap or skeet shooting exhibitions . . . ;
>
> (c) In the case of a firearm, directly to or from any exhibition or display of firearms which is sponsored by any law enforcement agency, any rifle or pistol club, or any firearms collectors club, for the purpose of displaying the firearms to the public or to the members of the organization or club . . .;

(4) A person from keeping or carrying about a private or commercial aircraft or any boat, or from transporting to or from the aircraft or boat for the purpose of installation or repair of a visual distress signaling device approved by the United States Coast Guard.

[N.J.S.A. 2C:39-6(f).]

N.J.S.A. 2C:39-6(g) states:

> Any weapon being transported under paragraph (2) of subsection b., subsection e., or paragraph (1) or (3) of subsection f. of this section shall be carried unloaded and contained in a closed and fastened case, gunbox, securely tied package, or locked in the trunk of the automobile in which it is being transported, and in the course of travel shall include only deviations as are reasonably necessary under the circumstances.

A-1053-19T3

[N.J.S.A. 2C:39-6(g).]

We do not set aside a verdict unless the appealing party can show that the omission of an unrequested jury charge was sufficiently grievous and "clearly capable of producing an unjust result." R. 1:7-2; R. 2:10-2. Moreover, a trial court should only sua sponte issue a charge on an affirmative defense "if all of the elements of the affirmative defense are clearly indicated by the evidence." State v. Daniels, 224 N.J. 168, 177 (2016).

> [T]he notion that the facts must clearly indicate the appropriateness of the jury instruction is paramount: The trial court does not have the obligation . . . to sift through the entire record in every trial to see if some combination of facts and inferences might rationally sustain a[n unrequested] charge.
>
> [State v. Rivera, 205 N.J. 472, 489-90 (2011) (second alteration in original) (citations omitted).]

"If the defendant does not object to the charge [or lack of charge] at the time it is given, there is a presumption that the charge was not error and was unlikely to prejudice the defendant's case." State v. Singleton, 211 N.J. 157, 182 (2012) (citing State v. Macon, 57 N.J. 325, 333-34 (1971)). Because defendant did not request these charges at trial, he must now show that the record "clearly warrant[ed] the unrequested jury instruction." Rivera, 205 N.J. at 489.

At trial, defendant bore the burden of producing "some evidence in support of each prong of the defense, irrespective of whether there was strong evidence to the contrary." State v. Walker, 203 N.J. 73, 87 (2010).  Defendant contends his counsel met the burden under N.J.S.A. 2C:39-6(f) by eliciting the following testimony on cross-examination of one of the police witnesses:

> [Defense counsel:] And you recognized this item to be a range gun, right?
>
> [Witness:] Yes.
>
> [Defense counsel:] And one of the permissible destinations for transporting in a vehicle is to go to the range, right?
>
> [Witness:] To bring a weapon, yes, going to and from the range, correct.

We deem this testimony alone to be insufficient.  Defendant failed to proffer any evidence whatsoever that he was: (1) "[a] member any rifle or pistol club" and was "going to or from a place of target practice," N.J.S.A. 2C:39-6(f)(1); (2) possessed a valid hunting or fishing license and was carrying the firearm for the purpose of hunting or target practice, N.J.S.A. 2C:39-6(f)(2); or (3) a person involved with the keeping or transport of a private or commercial aircraft or boat, N.J.S.A. 2C:39-6(f)(4). Moreover, defendant failed to show that he was traveling "directly to or from" a hunting trip, a target range, or a firearms

A-1053-19T3

exhibition.  N.J.S.A. 2C:39-6(f)(3)(a) to (c).  While defendant testified that he and a friend "tried to go to the gun range" in Connecticut, he also testified that he was traveling from a work conference in Connecticut to a meeting in Maryland, not "directly to and from" the range as required under N.J.S.A. 2C:39-6(f)(3)(b).

Additionally, because defendant failed to demonstrate that he was transporting a weapon under N.J.S.A. 2C:39-6(f)(3)(a) or (c), he was not entitled to a jury charge on N.J.S.A. 2C:39-6(g).  See N.J.S.A. 2C:39-6(g) (stating that the exception applies to "[a]ny weapon being transported under . . . paragraph (1) or (3) of subsection f. of this section") (emphasis added).  Consequently, there was no obligation for the trial court to sua sponte charge N.J.S.A. 2C:39-6(f) and (g), and we discern no plain error.

V.

We next address defendant's argument that the trial court violated his Sixth Amendment right "to be confronted with the witnesses against him" by limiting defense counsel's cross-examination of McCallum's six prior convictions.  Defendant claims that by limiting the scope of cross-examination to only three of McCallum's six prior convictions, the trial court deprived him

of the ability "to fully confront the alleged victim McCallum before the jury[.]" We disagree.

N.J.R.E. 609 governs impeachment by prior conviction. N.J.R.E. 609(a)(1) states: "For the purpose of attacking the credibility of any witness, the witness's conviction of a crime, subject to [N.J.R.E.] 403, shall be admitted unless excluded by the court pursuant to paragraph (b) of this rule." Where the prior conviction is less than ten years old and the criminal defendant chooses to testify, if the prior conviction is similar to the offense charged, "the prosecution [or party] may only introduce evidence of the defendant's prior convictions limited to the degree of the crimes, the dates of the convictions, and the sentences imposed, excluding any evidence of the specific crimes of which defendant was convicted . . . ." N.J.R.E. 609(a)(2)(B). With limited exception, N.J.R.E. 609(b) presumptively excludes evidence of a prior conviction, if the conviction or defendant's release from confinement was more than ten years before the trial date.

"[T]he decision of whether a prior conviction may be admitted to impeach a witness 'rests within the sound discretion of the trial judge . . . .'" State v. Harris, 209 N.J. 431, 442 (2012) (quoting State v. Whitehead, 104 N.J. 353, 358

(1986)).[3]  "[O]rdinarily evidence of prior convictions should be admitted and the burden of proof to justify exclusion rests on the defendant."  Ibid.  Our Supreme Court has consistently held "that prior-conviction evidence has probative value for impeachment purposes . . . ."  State v. T.J.M., 220 N.J. 220, 235 (2015).

Here, the State moved to bar defense counsel from cross-examining McCallum, the State's witness, about his prior convictions.  McCallum's criminal history included four convictions exceeding the ten-year threshold—dating back to 1995 and earlier.  The trial court properly conducted a Sands/Brunson hearing[4] denying in part and granting in part the State's motion

---

[3] In 2014, our Supreme Court amended N.J.R.E. 609 to allow the admissibility of prior convictions that are less than ten years old and created a presumption against admissibility of prior convictions that are more than ten years old.

[4] Courts ruling on the admissibility of a witness's prior convictions must conduct a two-tier analysis under State v. Sands, 76 N.J. 127 (1978) and State v. Brunson, 132 N.J. 337 (1993).  State v. Lykes, 192 N.J. 519, 523 n. 2 (2007).  To satisfy the Sands tier, the trial court must first determine whether a witness's prior conviction is so remote that the prejudicial effect of its introduction outweighs its probative value.  Sands, 76 N.J. at 147; see also N.J.R.E. 609(a)(1).  If the court determines that the conviction is more probative than prejudicial, it proceeds to the Brunson tier to determine whether the conviction "is the same or similar to the offense charged[.]"  Brunson, 132 N.J. at 391.  If the conviction meets this criteria, then "the State may introduce evidence of the [witness's] prior conviction limited to the degree of the crime and the date of the offense but excluding any evidence of the specific crime of which [the witness] was convicted."  Ibid.

to preclude cross-examination of McCallum. In accord with N.J.R.E. 609(b)(2), the trial court conducted the requisite balancing test and determined that McCallum's 1998 conviction for possession of stolen property, 1992 conviction for possession of a loaded firearm, and 1995 conviction for possession of a controlled dangerous substance (CDS) were too remote to be admissible. However, the trial court allowed defense counsel to cross-examine McCallum with respect to his 1995 petty larceny conviction, his 2000 conviction for possession with intent to distribute CDS, and his 2008 conviction for conspiracy to possess or distribute CDS because these convictions involved crimes of dishonesty or were serious. The three convictions as noted were clearly admissible for impeachment purposes. Therefore, we conclude the trial court did not abuse its discretion by admitting three of McCallum's six prior convictions for impeachment purposes.

VI.

At the conclusion of the State's case-in-chief, defense counsel moved, "pro forma," for a judgment of acquittal, which was denied by the trial court. Defendant argues the trial court dismissed the motion in error and submits he is entitled to judgments of acquittal on all counts. We reject defendant's argument.

24

To prove second-degree possession of a handgun beyond a reasonable doubt, the State must show (1) defendant possessed a handgun; (2) defendant was aware he possessed the handgun; and (3) defendant did not have a permit allowing for possession of the handgun.[5] N.J.S.A. 2C:39-5(b). To satisfy the first element of the crime, the State admitted the handgun Trooper Finney recovered from defendant's car during the traffic stop. The State also established defendant's knowing possession by moving defendant's recorded statement given at the police station into evidence in which he admitted to knowledge of the handgun in his vehicle.

Similarly, in order to prove fourth-degree possession of a hollow-point bullets beyond a reasonable doubt, the State must show (1) there were hollow-point bullets; and (2) defendant was aware he possessed the hollow-point bullets. N.J.S.A. 2C:39-3(f). At trial, the State admitted into evidence the hollow-point bullets the troopers recovered from defendant's car. Further, the State proffered the testimony of a firearms identification expert who testified that the bullets admitted into evidence were compatible with defendant's firearm. This evidence, combined with the proofs used to establish defendant's knowing

---

[5] At trial, the parties stipulated that defendant did not "seek or obtain a permit to purchase, carry or possess a firearm in the State of New Jersey."

possession of the firearm, was sufficient for a reasonable jury to find beyond a reasonable doubt that defendant was guilty of fourth-degree possession of hollow-point bullets.

Finally, to prove aggravated assault by pointing a firearm beyond a reasonable doubt, the State must show (1) "that the defendant knowingly pointed a firearm at or in the [presence] of another whether or not the defendant believed it to be loaded" and (2) "that the defendant acted under circumstances that manifested extreme indifference to the value of human life."  Model Jury Charges (Criminal), "Aggravated Assault (N.J.S.A. 2C:12-1(b)(4))" (rev. Mar. 21, 2005).  The State carried its burden by admitting evidence of McCallum's 9-1-1 calls detailing the incident, his trial testimony, the State Troopers' testimony, and defendant's recorded statement to the police.  The combination of this evidence and the favorable inferences reasonably drawn therefrom, led the jury to find defendant guilty of these particular crimes.  We therefore discern no error in the trial court's denial of defendant's motion for acquittal.

## VII.

Finally, defendant argues the sentencing court improperly applied mitigating and aggravating factors when crafting his sentence and "failed to consider and apply New Jersey law informing the serious injustice standard."

26

He also contends, and the State concurs, that a remand is necessary to correct errors in the JOC.

For the first time on appeal, defendant asserts the sentencing court improperly balanced the mitigating and aggravating factors resulting in error by failing to sentence defendant one-degree lower for the unlawful possession of a firearm.[6] He also claims imprisonment creates a serious injustice here because the hardship imposed on defendant outweighs the need for general deterrence. Because defendant failed to raise this issue before the sentencing court, we review for plain error under Rule 2:10-2.

"The Criminal Code allows a sentencing judge to downgrade a first- or second-degree offense where 'the mitigating factors substantially outweigh the aggravating factors and where the interest of justice demands.'" State v. Trinidad, 241 N.J. 425, 453 (2020) (quoting N.J.S.A. 2C:44-1(f)(2)). A sentencing court must find both prongs of the test are satisfied before issuing a downgrade. Ibid.

---

[6] Defendant's brief inappropriately relied on the "serious injustice" exception found in State v. Jabbour, 118 N.J. 1 (1990). Jabbour articulated the standard for overcoming the presumption of imprisonment, which is distinct from downgrading an offense. See State v. Hodge, 95 N.J. 369, 376 (1984) (noting that the standard governing the downgrading of a defendant's sentence is different from that governing a trial court's decision whether to sentence defendant to a term of imprisonment).

A-1053-19T3

The first prong of the test requires the defendant demonstrate that the mitigating factors substantially outweigh the aggravating factors at sentencing. A trial court imposing a sentence must "state reasons for imposing such a sentence including . . . the factual basis supporting a finding of particular aggravating or mitigating factors affecting the sentence." R. 3:21-4(g). The statement of reasons demonstrates "that all arguments have been evaluated fairly." State v. Bieniek, 200 N.J. 601, 609 (2010). Moreover, the factors must be supported by "competent and reasonably credible evidence," State v. Roth, 95 N.J. 334, 363 (1984), and must be "qualitatively assessed and assigned appropriate weight in a case-specific balancing process." State v. Fuentes, 217 N.J. 57, 72-73 (2014) (citing State v. Kruse, 105 N.J. 354, 363 (1987)).

At sentencing, the court found aggravating factor nine of N.J.S.A. 2C:44-1(a) applied, the need for general and specific deterrence, and gave it moderate weight based on the seriousness of the crime and the need to deter the public. The sentencing court also found mitigating factor seven, N.J.S.A. 2C:44-1(b)(7), defendant's lack of a prior criminal history; eight, N.J.S.A. 2C:44-1(b)(8), that defendant's conduct was the result of circumstances unlikely to reoccur; and nine, N.J.S.A. 2C:44-1(b)(9), defendant's character and conduct indicate he is

28

unlikely to commit another offense. The court noted the weight it gave to the need for deterrence:

> [A]lthough the mitigating factors may outweigh the aggravating factors, in this case, they do not cumulatively exceed the aggravating factors to an extraordinary degree such that it would override the need for deterrence; that is a factor in this case which cannot be overlooked, the need for deterrence. As I said, it has moderate weight as applied to [defendant], but it has great weight as applied to the general public in this environment that we live in. There is a great need to deter here. It's difficult to override that need even in this case.

We agree.

Our Supreme Court has stated, "[i]n fixing a sentence within the statutory range, a judge must determine whether specific aggravating or mitigating factors are grounded in credible evidence in the record and then weigh those factors." State v. Case, 220 N.J. 49, 54 (2014). The trial court must also explain how it conducted the weighing process. Id. at 65. The Court has also emphasized that "mitigating factors 'supported by credible evidence' are required to 'be part of the deliberative process.'" Id. at 64 (quoting State v. Dalziel, 182 N.J. 494, 505 (2005)).

We review the trial court's sentencing decision under an abuse of discretion standard. State v. Jones, 232 N.J. 308, 318 (2018). In doing so, we

consider whether: "(1) the sentencing guidelines were violated; (2) the findings of aggravating and mitigating factors were . . . 'based upon competent credible evidence in the record'; [and] (3) 'the application of the guidelines to the facts' of the case 'shirk[s] the judicial conscience.'" State v. Bolvito, 217 N.J. 221, 228 (2014) (third alteration in original) (Roth, 95 N.J. at 364-65).

Here, the sentencing court explained its basis for the aggravating factor outweighing the mitigating factors. The sentence is based on competent credible evidence in the record and does not shock the judicial conscience. The court applied the aggravating and mitigating factors and followed the appropriate sentencing guidelines. Bieniek, 200 N.J. at 608 (quoting Roth, 95 N.J. at 364-65). We discern no abuse of discretion and conclude defendant failed to satisfy the first prong of the downgrade test.

We also conclude defendant failed to meet the second prong of the test. "While the Code does not define the 'interest of justice,' . . . it is a high bar, requiring 'compelling' reasons for downgrade." Trinidad, 241 N.J. at 454 (citing State v. Megargel, 143 N.J. 484, 500-02 (1996)). Factors a trial court should consider when determining whether a first- or second-degree conviction should be downgraded include: (1) the severity of the crime; (2) the defendant's role in the crime; and (3) the need for deterrence. Megargel, 143 N.J. at 500-02. The

30

compelling reasons justifying a downgrade "must be in addition to, and separate from, the mitigating factors." Trinidad, 241 N.J. at 454.

Generally, "[t]he higher the degree of the crime, the greater the public need for protection and the more need for deterrence." Megargel, 143 N.J. at 500. Because a reviewing court should view the sentence from the prospective of deterrence, id. at 501, the downgrade of an offense for which the Legislature has provided an enhanced penalty "requires more compelling reasons than the downgrade of an offense for which the Legislature has not attached an enhanced penalty." State v. Rice, 425 N.J. Super. 375, 384-85 (App. Div. 2012) (quoting Megargel, 143 N.J. at 502).

Here, defendant was convicted of the unlawful possession of a firearm, a Graves Act violation carrying a legislatively imposed enhanced penalty. See N.J.S.A. 2C:43-6(c). Consequently, defendant must provide compelling reasons justifying a downgrade, which he has not done. Defendant's lack of a criminal history and being a law-abiding citizen are not enough. The facts of the case support the sentence imposed by the court.

However, we remand and direct the trial court to correct and amend the JOC to reflect that: (1) the conviction was the result of a jury trial, not a

31

negotiated plea[7]; (2) defendant did not waive his right to appeal; and (3) mitigating factor eight, N.J.S.A. 2C:44-1(b)(8), was found.

Affirmed in part and remanded in part for correction of the JOC. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

---

[7] The language at issue is: "T[his] was a negotiated plea between the prosecutor and defendant. It appears fair and in the interest of justice, the court is imposing the recommended sentence. The [c]ourt consents to a reduction of the primary parole eligibility date pursuant to N.J.S.A. 30:4-123.67."